UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-344

| | | |
|---|---|---|
| **ATAIN SPECIALTY INSURANCE COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **LUXURY AUCTIONS MARKETING, INC. AND JEREMY LECLAIR,** | ) ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on plaintiff's Motion for Summary Judgment. The deadline for filing a response has passed, no response has been filed, and defendants are represented by counsel. For the reasons that follow, it appears that no genuine issues of fact remain and that defendants are entitled to the declaratory judgment they seek as a matter of law.

**FINDINGS AND CONCLUSIONS**

**I.  Background**

In this action, plaintiff seeks a determination that they are not obligated to defend or indemnify defendants under a policy of insurance in a related civil action filed in the Superior Court of North Carolina. In the state court action, defendants herein are the plaintiffs and counterclaim-defendants. Eleven counterclaims have been asserted against them, including nine breach of contract claims, a claim for conversion, and a state statutory claim for voidable conveyance. Plaintiff contends that under the terms of the policy of insurance it issued, they have

-1-

no obligation to defend or indemnify because the claims do not amount to accidents as defined under applicable North Carolina law.

Review of the insurance policy reveals that it covers legal obligations as a result of bodily injury or property damage. Specifically, coverage is triggered when "bodily injury" or "property damage" is caused by an "occurrence" that "occurs during the policy period." (Doc. #15 at 6). The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. Specific exclusions to this policy include property damage to "personal property in the care, custody or control of others" and "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Id. While "accident" is not defined within the policy, North Carolina law provides the definition of "an unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty." Waste Mgmt. of the Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 694 (1986).

**II.     Legal Standard**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it may affect the suit's outcome under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). The burden then shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

The court views evidence and any inferences from evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The question posed by summary judgment is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

**III.  Discussion**

    **A.  North Carolina Law Controls**

First, the Court finds that North Carolina law controls. North Carolina courts interpret insurance contracts according to the law of the place where the policy is made. Roomy v. Allstate Ins. Co., 256 N.C. 318, 322 (N.C. 1962); see also NC. Gen. Stat. § 58-3-1 (2017) ("All contracts of insurance . . . in this State shall be deemed to be made therein . . . and are subject to the laws thereof"). Under these rules, "substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract."

Fortune Ins. Co. v. Owens, 351 N.C. 424, 428 (2000). Here, the policy in question was delivered to defendants in North Carolina and, as a result, North Carolina law controls in this matter.

### B. Summary Judgment is Appropriate

The court also finds that summary judgment is appropriate, as North Carolina courts recognize that issues concerning the coverage provided by insurance are properly determined at the summary judgment stage rather than trial. Certain Underwriters at Lloyd's London v. Hogan, 147 N.C. App. 715, 718 (2001). "An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings." Waste Mgmt., 315 N.C. at 691. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. Id. (citing Strickland v. Hughes, 273 N.C. 481, 487 (1968). Conversely, when pleadings allege facts that indicate the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, it is not bound to defend. Id.

### C. Coverage for the Eleven Counterclaims

There is no coverage under this policy for the eleven counterclaims. When determining whether there is coverage, North Carolina courts "apply the 'comparison test,' reading the policies and the relevant pleading side by side . . . to determine whether the events as alleged are covered or excluded," and "the facts alleged . . . are to be taken as true and compared to the language of the insurance policy." Kubit v. MAG Mut. Ins. Co., 210 N.C. App. 273, 278 (2011). A court's analysis of the facts are limited to those alleged in the underlying pleading, not any and every version of the facts. Penn. Nat. Mut. Cas. Ins. Co. v. Sharpe Images, Inc., 2012 WL 3962747 (W.D.N.C. 2012). A court may not attempt to remake the contract, such as by recasting intentional conduct as negligence. Id. "[T]he court must enforce the contract as the parties have made it and

may not, under the guise of interpreting an ambiguous provision, remake the contract and impose liability upon the company which it did not assume and for which the policyholder did not pay." Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354 (1970).

The goal is to effectuate the intent of the parties when the policy was issued; if a policy defines a term, that definition must be used, but if no definition is given, words are given their plain meaning. Id. Ultimately, the burden is on the insured to show that coverage exists for the claimed loss. Nationwide Mut. Ins. Co. v. McAbee, 268 N.C. 326 328 (1966). While defendants' failure to respond suggests under Rule 56 that they cannot meet their burden for the claimed loss, the Court will nevertheless analyze whether coverage exists.

### 1. Breach of Contract Claims

Of the eleven amended counterclaims for which defendants seek coverage under the policy, nine are for breach of contract and are summarized as follows:

1. Breach of paragraph 7.1.1 of the License Agreement;

2. Breach of paragraph 2.2 of the License Agreement;

3. Breach of paragraph 3.2 of the License Agreement;

4. Breach of paragraphs 8.2.2 and 8.3.3 of the License Agreement;

5. Breach of paragraph 13.3 of the License Agreement;

6. Breach of paragraph 9.1 of the License Agreement;

7. Breach of paragraph 13.2 of the License Agreement;

8. Breach of paragraph 1.2.2 of the Stock Purchase Agreement; and

9. Breach of paragraphs 1.2.2, 1.2.4, and 1.2.10 of the Stock Purchase Agreement.

See Doc. #1-5, pg. 8-10. North Carolina courts have consistently held that breach of contract is not an "occurrence" within the meaning of an insurance policy. Holz-Her U.S., Inc. v. U.S. Fid. & Guar. Co., 141 N.C. App. 127, 130 (2000) (where a policyholder was sued for alleged breach of contract when they failed to lease business equipment to another company as contractually promised, and the court held that such business injuries "were either expected or substantially certain to occur"); see also Hobson Construction Company, Inc. v. Great American Insurance Company, 71 N.C. App. 586 (1984) (where the court held that a breach of contract claim arising out of the alleged defective construction and repair of a dam did not fall within the language of the insuring agreement). The Court finds that, since the first nine counterclaims are all claims for breach of contract, they do not qualify as an "occurrence" under the policy. Defendants are therefore not entitled to coverage or a defense on these grounds.

## 2. Conversion and Voidable Conveyance

The tenth counterclaim is for conversion, wherein it is alleged that defendants herein intentionally and purposefully converted counterclaim plaintiffs' "customer database, computers, software licenses, and data." As "occurrence" is defined in the policy as an "accident," an occurrence is thus limited to events that are unexpected and *unintended* from the standpoint of the insured. Waste Mgmt., 315 N.C. at 691; Edwards v. Akion, 52 N.C. App. 688, 691 (1981); City of Wilmington v. Pigott, 64 N.C. App. 587, 589 (1983). Indeed, if the alleged conduct is exclusively within the control of the insured or intended by the insured, it cannot constitute an occurrence. Builders Mut. Ins. Co. v. Mitchell, 210 N.C. App. 657, 661 (2011). Conversion is an intentional tort under North Carolina law. DeMurry v. N.C. Dept. of Corrections, 195 N.C. App. 485, 492 (2009). As a result, claims for conversion are afforded no coverage as an "occurrence"

because they involve allegations that the at-fault party "intentionally acted wrongfully," and thus cannot be said to be accidental. In re Russell, 285 B.R. 877, 885 (Bankr. M.D.N.C. 2001).

Similarly, the eleventh counterclaim is a statutory claim for voidable conveyance. In that claim, it is alleged that defendants intentionally and fraudulently liquidated their operating and escrow accounts and transferred the funds out of these accounts with the intent to hinder, delay, or defraud the defendants in the underlying suit. As this claim involves allegations of deliberate intent to act wrongfully, the insurance policy provides no coverage for this claim for the reasons previously discussed.

The Court finds that defendants are not entitled to coverage on the tenth and eleventh amended counterclaims.

### D. Policy Exclusions

Finally, it is worth noting that, even if the Court had found the amended counterclaims to be claims for which overage was afforded, policy exclusions enumerated in the insurance agreement would also result in denial of coverage.

Where a policy of insurance contains exclusions from coverage, those exclusions will be given force and effect where the words of exclusion are clear, precise, and fit the circumstances presented; if the exclusion is "ambiguous or reasonably susceptible to differing constructions," the exclusion may not apply and "must be given the construction most favorable to the insured." Se. Airmotive Corp. v. U.S. Fire Ins. Co., 78 N.C. App. 418, 420 (1985). To avoid coverage on the basis of an exclusion for expected or intended injuries, an insurer must show that the injury itself was expected or intended by the insured, N. Carolina Farm Bureau Mut. Ins. Co. v. Stox, 330 N.C.

-7-

697, 705 (1992), and the insurer bears the burden of making such showing. Universal Ins. Co. v. Burton Farm Dev. Co., LLC, 216 N.C. App. 469, 478 (2011).

In North Carolina, an intentional act may be excluded under a liability policy if the act is (1) intended to cause injury or damage; or (2) substantially certain to cause injury or damage. In re Russell, 85 B.R. at 890. The insured's subjective intent is not determinative; instead, courts view the evidence in an objective light to determine whether the insured should have anticipated that their actions likely would cause injury. Id.; Henderson v. U.S. Fidelity & Guar. Co., 124 N.C. App. 103, 110 (1996) ("intent to injure may be inferred as a matter of law from the intent to act . . . notwithstanding assertions that [the insured] did not intend or anticipate his misrepresentations to injure or damage"); Nationwide Ins. Co. v. Bd. Of Trustees of the Univ. of Illinois, 116 F.3d 1154 (7th Cir. 1997) (where the court held that an insured expects or intends an injury when he acts with an intent or conscious disregard that damage will result).

Here, the policy of insurance clearly excludes intentional acts. In particular, one exclusion bars coverage for bodily injury or property damage which is "expected or intended from the standpoint of the insured." The eleven amended counterclaims for which defendants seek coverage all involve expected (breach of contract) or intended (conversion and voidable conveyance with intent to delay, hinder, or defraud) damage. Another policy exclusion provides that insurance does not apply to "'property damage' to 'personal property in the care, custody, or control of the insured,'" an exclusion that has been upheld as valid in similar cases. South Carolina Ins. Co. v. Southeastern Painting Co., Inc., 77 N.C. App. 391, 394-95 (1985); In re Russell, 285 B.R. at 889; see also Keller v. Case, 757 So.2d 920 (2000); Valentine-Radford, Inc. v. American Motorists Ins. Co., 990 S.W.2d 47 (1999); Hertz Corp. v. Smith, 657 A.3d 1316 (1995). As the amended

counterclaims for conversion and voidable conveyance involve property and funds that were in defendants' care, custody, or control, this exclusion would apply.

Thus, even if the Court found differently on whether the conduct alleged in the amended counterclaims constituted "occurrences" under the policy and state law, the court finds that defendants' alleged conduct is barred from coverage by valid policy exclusions.

**E.     Advertising Injury**

Finally, none of the amended counterclaims qualify as personal advertising injury, and defendants cannot seek relief under the policy on that basis. "Personal advertising injury" has no ambiguity in an insurance policy, and is only triggered when the underlying allegations against the insured arise out of a specifically enumerated offense set forth in the insurance policy. Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 10-11 (2010).

Here, the express terms of the policy set out personal advertising injury as: (1) false arrest, detention, imprisonment; (2) malicious prosecution; (3) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room; (4) oral or written publication, in any manner of material that slanders or libels a person or an organization or disparages a person's or organization's goods, products, or services; (5) oral or written publication, in any manner of material that violates a person's right of privacy; (6) the use of another's advertising idea; (7) or infringing upon another's copyright, trade dress, or slogan. (Doc. #1-2, pg. 99). None of the amended counterclaims fall under these express parameters. Further, policy exclusions on these grounds involving knowing violation of rights of another, contractual liability, and breach of contract would bar coverage even if the amended counterclaims did fall into one of the seven categories set out in the policy. Id. at pgs. 90-91.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Summary Judgment (#14) is **GRANTED**.

**IT IS FURTHER ORDERED** that **DECLARATORY JUDGMENT** is hereby entered providing that:

(1)  defendants are not entitled to coverage under the insurance policy issued by plaintiff for the eleven amended counterclaims in the underlying lawsuit;

(2)  plaintiff is not obligated to defend or pay judgments obtained against defendants in connection with those counterclaims; and

(3)  this action is otherwise **DISMISSED**.

The Clerk of Court shall enter a Judgment consistent with this Order.

Signed: December 18, 2017

Max O. Cogburn Jr.
United States District Judge